## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

SHARON SHAW,                          :

      Plaintiff,                 :

vs.                                   :          CA 08-0404–CG-C

MICHAEL J. ASTRUE,                    :
Commissioner of Social Security,
                                      :
      Defendant.

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits and partially denying her claim for supplemental security income benefits. This action is before the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's brief, and the parties' arguments at the March 11, 2009 hearing before the undersigned, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this

decision.

Plaintiff alleges disability between May 19, 1992 and May 25, 2000 on account of degenerative disc disease, borderline intellectual functioning, mental retardation, and depression. The ALJ made the following relevant findings:

> **3.     Prior to May 26, 2000, the claimant possessed the following severe impairments: Two level degenerative disc disease of the lumbar spine with left paracentral disc herniation at the L4-5 level and mild radiculopathy. (20 CFR 404.1520(c) and 416.920(c).**
>
> .     .     .
>
> The Administrative Law Judge acknowledges that the claimant alleged an onset date of May 19, 1992. However, the undersigned finds that the medical and non-medical evidence of record supports the conclusion that the claimant possessed the residual functional capacity to perform other work that existed in significant numbers in the national economy at the light exertional level at all times during the period May 19, 1992, the claimant's alleged disability onset date, through May 25, 2000. Since the claimant's insured status for purposes of obtaining a period of disability and disability insurance benefits expired on June 30, 1997, the claimant cannot be found disabled under Title II of the Social Security Act, as amended, although her application for Title XVI benefits remains viable. With regard to the claimant's application for Supplemental Security Income benefits, the Administrative Law Judge finds that the medical and non-medical evidence of record supports a conclusion that the claimant has been unable to engage in any substantial gainful activity on a regular and sustained basis since May 26, 2000, in that she has possessed medically determinable severe impairments that, as of that date, precluded her performance of

competitive work activity at any exertional level.

After considering the medical and documentary reports contained in the record, as well as the vocational expert witness' testimony from the prior November 30, 2001 unfavorable Administrative Law Judge decision, the Administrative Law Judge finds that the preponderance of the evidence supports a conclusion that a "partially favorable" decision (regarding all material issues of disability) finding the claimant disabled as of May 26, 2000 can be issued in this case. The following discussion of the evidence will highlight the evidentiary support contained in the record for reaching such a conclusion.

**4.     Prior to May 26, 2000, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d) and 416.920(d)).**

.     .     .

**5.     After careful consideration of the entire record, the undersigned Administrative Law Judge finds that, prior to May 26, 2000, the claimant had the residual functional capacity to perform a wide range of work activities at the light exertional level.**

The Administrative Law Judge finds that the claimant possessed the residual functional capacity to perform a wide range of work activities at the light exertional level prior to May 26, 2000. Specifically, the Administrative Law Judge finds that the claimant was capable of sitting for one hour at a time up to a total of 8 hours in an 8-hour workday, standing for one hour at a time up to a maximum of 6 hours in an 8-hour workday, walking for one hour at a time up to a maximum of 4 hours in an 8-hour workday, frequently lifting up to 20 pounds, occasionally lifting up to 25 pounds, frequently carrying up to 10 pounds, occasionally carrying up to 25 pounds, occasionally climbing,

bending, squatting, and crawling, and frequently reaching. The claimant had no significant manipulative, visual, or communicative limitations and, with respect to environmental limitations, the claimant was totally restricted from activities involving unprotected heights and moderately restricted from activities involving being around moving machinery. **The claimant did not allege a medically determinable severe mental impairment at the time she filed her applications and there is no documentary evidence of any allegations of a mental impairment or diagnosis or treatment of a mental impairment during the period May 19, 1992 through May 25, 2000. Consequently, the Administrative Law Judge finds that the claimant had no mental functional limitations prior to May 26, 2000.**

.        .        .

**6.      Prior to May 26, 2000, the claimant was unable to perform her past relevant work. (20 CFR 404.1565 and 416.965).**

.        .        .

**7.      The claimant was 34 years old on the alleged disability onset date, which the Regulations define as a younger individual. (20 CFR 404.1563 and 416.963).**

**8.      The claimant has a "limited" level of education and is able to communicate in the English language. (20 CFR 404.1564 and 416.964).**

**9.      Transferability of job skills is not material to the determination of disability because the claimant's past relevant work is unskilled. (20 CFR 404.1568 and 416.968).**

**10.     Considering the claimant's age, education, work experience, and residual functional capacity prior to May 26, 2000, there were jobs that existed in significant numbers**

4

**in the national economy that the claimant was able to perform. (20 CFR 404.1560(c), 404.1566, 416.960(c), 416.966).**

.        .        .

**Inasmuch as the Administrative Law Judge has determined that the medical evidence submitted after the November 30, 2001 unfavorable Administrative Law Judge decision reflects no significant change in the claimant's impairments or functional limitations for the period May 19, 1992 through May 25, 2000, the undersigned has adopted the prior testimony of the vocational expert witness, Mr. Barry Murphy, at the October 17, 2001 hearing, based on the hypothetical questions posed to him.** [] At the October 17, 2001 hearing, Mr. Murphy was asked whether any jobs existed in the national economy that an individual of the claimant's age (i.e., a younger individual), **education (i.e. a limited 10th grade level of education)**, and past relevant work experience (i.e., as an order puller which is classified by the DOT as medium, unskilled work) could perform, assuming that the individual possessed the specific physical capacities and limitations as set out by Dr. Fontana in his November 20, 1998 PCE form in Exhibit 15F. Mr. Murphy testified that such an individual as described in the hypothetical question would be capable of performing light, unskilled jobs and he gave the following examples of such jobs: (1) Bench Assembler (DOT #706.684-022), with 1,500,000 jobs in the national economy and 15,600 in the state economy; (2) Housekeeper (DOT #323.687-014) with 1,200,000 jobs in the national economy and 13,700 jobs in the state economy; and (3) Mail Clerk in a non-postal capacity (DOT #209.687-026), with 275,000 jobs in the national economy and 2,100 jobs in the state economy.

.        .        .

Based on the testimony of the vocational expert and the framework of Medical-Vocational Rule 202.17, the undersigned

> Administrative Law Judge concludes that, considering the
> claimant's age, education, past work experience, and residual
> functional capacity, the claimant was capable of making a
> successful adjustment to other work that existed in significant
> numbers in the national economy prior to May 26, 2000. A
> finding of "not disabled" is therefore appropriate under the
> framework of the Medical-Vocational Guidelines Rule 202.17.

(Tr. 599, 599-600, 600, 600-601, 604, 604-605 & 606) The Appeals Council

affirmed the ALJ's partially-favorable decision (Tr. 592-594) and thus, that

decision became the final decision of the Commission of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving

that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d

1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden,

the examiner must consider the following four factors: (1) objective medical

facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence

of pain; and (4) the claimant's age, education and work history. *Id.* at 1005.

Once the claimant meets this burden, as here, it becomes the Commissioner's

burden to prove that the claimant is capable, given her age, education and work

history, of engaging in another kind of substantial gainful employment which

exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th

Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to partially deny claimant benefits, on the basis that prior to May 26, 2000 she could perform light work existing in substantial numbers in the national economy, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In this case, the plaintiff contends that the ALJ committed the following errors: (1) he erred in finding that she did not suffer a severe mental impairment between May 19, 1992 and May 26, 2000; (2) he erred in failing to find her presumptively disabled under Listing 12.05C since her alleged onset date of May 19, 1992; (3) he erred in failing to call a medical expert to infer her onset date under SSR 83-20; and (4) he erred in failing to pose hypothetical questions to a vocational expert on remand that incorporated all of plaintiff's severe mental and physical conditions between May 19, 1992 and

May 26, 2000. Because the undersigned agrees with plaintiff that the ALJ erred in failing to find that she suffered from a severe mental impairment between May 19, 1992 and May 26, 2000, the Court considers only tangentially one of the others issue raised by plaintiff. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

The Commissioner's severity regulation requires the claimant to make a threshold showing that she has an impairment which significantly limits her physical or mental ability to perform basic work activities.  20 C.F.R. §§ 416.920(c), 416.921(a) (1998); *Bowen v. Yuckert,* 482 U.S. 137, 147 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  Basic work activities include functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;  understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 416.921(b).  An impairment can be considered not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability

to work, irrespective of age, education, or work experience." *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984); *see Yuckert, supra*, 482 U.S. at 153, 107 S.Ct. at 2297 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account").[1]

> Inherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in SGA [substantial gainful activity] is not seriously affected. Before this conclusion can be reached, however, an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities must be made. A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and the informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of the function is inherent in the medical process itself.

SSR 85-28. The claimant's burden at step two of the sequential evaluation process is mild. *McDaniel v. Bowen,* 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most

---

[1]    It is clear that in *Yuckert,* the Supreme Court did not impose a standard higher than the *de minimis* standard set out in *Brady*. *See Stratton v. Bowen*, 827 F.2d 1447, 1451 n.7, 1452 n.9, 1452-1453 (11th Cir. 1987).

trivial impairments to be rejected.").

The evidence of record in this case is clear that the claimant, at the very least, has been diagnosed with borderline intellectual functioning, an impairment commonly recognized not only as a severe impairment, *see, e.g., Baxter v. Barnhart*, 165 Fed.Appx. 802, 804 (11th Cir. 2006) ("Here, the ALJ determined that Baxter had several severe impairments: the loss of Baxter's right eye, left shoulder pain, depression, and **borderline intellectual functioning**.");[2] *Thompson v. Apfel*, 1999 WL 1565205, *2 (S.D. Ala. 1999) (noting that the ALJ found plaintiff's severe impairments included her borderline intellectual functioning), *aff'd*, 244 F.3d 142 (11th Cir. 2000), but, as well, a lifelong impairment, *see Swartz v. Astrue*, 2008 WL 2544724, *1 (E.D. Mich. 2008) ("The Sixth Circuit found the ALJ's analysis defective in two respects. . . . Second, the ALJ disregarded evidence of Plaintiff's mental problems–diagnosed in 2001 as an 'Organic Mental Disorder,' '**Borderline Intellectual Functioning**,' and a 'Dependant Personality Disorder'– that indicated they were **lifelong** and potentially disabling during the critical period."); *Smith v. Chater*, 959 F.Supp. 1142, 1147 (W.D. Mo. 1997) ("The ALJ found that plaintiff's borderline intellectual ability was a **lifelong**

---

[2]    "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

condition which had not prevented him from functioning in a number of job settings."); *Lloyd v. Secretary of Health & Human Servs.*, 876 F.Supp. 996, 1009 (N.D. Ill. 1995) ("The [Appeals] Council distinguished *Brown* observing that *Brown* 'involved **borderline intellectual functioning**, a **lifelong** condition.'"). In addition, the various findings of the examining physicians of record, when viewed through the prism of the Commissioner's own regulations, establish that Shaw's lifelong borderline intellectual functioning was a severe impairment prior to May 26, 2000. Section 404.1520a(d)(1) of the Commissioner's regulations clearly establishes that a degree of functional limitation of moderate in the functional areas of activities of daily living, social functioning, and concentration, persistence or pace, as well as a rating above none in the fourth area, necessarily lends itself to a finding that a mental impairment is severe. *See id*. ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe[.]").  On July 3, 2006, Dr. Jake Epker, an examining psychologist, determined that on account of the lifelong impairment of borderline intellectual functioning,[3] and a

---

[3]    The finding that plaintiff has suffered from the lifelong impairment of borderline intellectual functioning is supported by the evidence of record. (Tr. 699-700 ("[T]he patient underwent intellectual evaluation at the age of 9 years, 11 months. Her FSIQ at that time, as demonstrated by her performance on the WISC, was 72, which falls in the Borderline range.");

depressive disorder, plaintiff has marked deficiencies of concentration, persistence or pace and 1 or 2 episodes of decompensation in work or work-like settings (Tr. 701-703; *see also* Tr. 697-700) and, on September 25, 2006, Dr. John Davis, an examining psychologist, indicated that plaintiff has a moderate limitation in maintaining attention, concentration and pace on account of her borderline intellectual functioning and depression (Tr. 726-727; *see also* Tr. 721-725). This evidence easily meets the low threshold of *McDaniel, supra*, and establishes that plaintiff has suffered from the severe mental impairment of borderline intellectual functioning her entire lifetime.[4] Accordingly, on remand, plaintiff's borderline intellectual functioning, and the limitations attendant thereto, must be consider by a vocational expert. *See, e.g., Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005) ("'We have previously concluded that borderline intellectual functioning, if supported by the record as it is here, is a significant nonexertional impairment that must be considered

---

*see also* Tr. 466 (school records reflecting WISC score))

[4]     Because borderline intellectual functioning is a lifelong condition, it was error for the ALJ to find that plaintiff had no mental limitations attributable to a mental impairment during the period May 19, 1992 through May 25, 2000 simply based upon Shaw's failure to assert a mental impairment when she filed her applications for benefits. As always, the ALJ has a continuing obligation to develop a full and fair record.

by a vocational expert.'").[5]

## **CONCLUSION**

The Magistrate Judge recommends that the decision of the Commissioner of Social Security partially denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g),  *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision.   The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412,  *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** this the 12th day of March, 2009.

  s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[5]      Contrary to the conclusion of the ALJ, evidence submitted after the November 30, 2001 unfavorable decision did reflect a change in the claimant's impairments and functional limitations. In particular, the 2006 psychological evaluations of Drs. Epker and Davis make clear that plaintiff has the lifelong condition of borderline intellectual functioning, an impairment which was not considered in the 2001 unfavorable decision.

### .  MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      ***Objection***.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

  s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE